UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

D.H., *a minor, by and through*                                         Plaintiff
RICHARD HARRIS

v.                                                          Civil Action No. 3:14-cv-732-CRS

TODD MATTI, *et al.*                                                    Defendants

\* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

The complaint in this case asserts over 150 causes of action—nine against each of seventeen defendants.  It alleges federal claims (under 28 U.S.C. § 1983 and the First and Fourteenth Amendments) and related state claims (wrongful imprisonment, assault, battery, negligent hiring, training, and supervision, and intentional infliction of emotional distress). Originally filed in Meade Circuit Court, at issue now is whether many of those claims are cognizable in federal court.[1]

Plaintiff is D.H., a minor proceeding through Richard Harris; Defendants are law enforcement officials and government entities.  Four of the defendants filed two separate motions to dismiss several of the claims.  (Docket Nos. 12 & 13).  Because the government entities are entitled to state or federal sovereign immunity, and because the complaint fails to state plausible claims against other defendants, the Court will grant the motions and dismiss numerous claims. This will leave Plaintiff's core claims—under 28 U.S.C. § 1983, wrongful imprisonment, assault, and battery—against the individual defendants accused of sexual assault.

---

[1] Because Plaintiff's complaint plainly asserted related federal and state claims, the Court previously denied Plaintiff's motion to remand.  *See D.H. ex rel. Harris v. Matti*, No. 3:14-cv-732-DJH, 2015 WL 3581125, at *1-3 (W.D. Ky. June 5, 2015).

## I.      Factual Background

Plaintiff's counsel seemingly alleged every conceivable claim against every conceivable defendant.  While the allegations here are serious, many of the claims Plaintiff's counsel has asserted are legally deficient.  Before the Court sorts through these claims, it will identify the named defendants and causes of action.

### A.  Plaintiff named seventeen defendants

The first three defendants are from Brandenburg, Kentucky.  Todd Matti was a police officer for the City of Brandenburg; Plaintiff sued him in his individual and official capacities. Scotty Singleton was the Police Chief for the Police Department of the City of Brandenburg; Plaintiff also sued him in his individual and official capacities.  Plaintiff also named the "City of Brandenburg, Kentucky, d/b/a Police Department of the City of Brandenburg."  The Court will simply refer to this Defendant as the "City."

The next three defendants are connected with the Breckinridge County, Kentucky, Sheriff's Office.  Chris Woosley was Deputy Sheriff of Breckinridge County; he was sued in his official and individual capacities.  Todd Pate was Sheriff of Breckinridge County; he was also sued in his official and individual capacities.  Plaintiff also separately named the Breckinridge County Sheriff's Office.

The final defendants are all associated with the Kentucky State Police.  Stratford Young was a Kentucky State Police Trooper; he was sued in both his individual and official capacities. Jerry Clanton was also a Kentucky State Police Trooper sued in his individual and official capacities.  Plaintiff also named Rodney Brewer, the Commissioner of the Kentucky State Police, in his individual and official capacities.  And finally, Plaintiff sued the "Commonwealth of Kentucky d/b/a Kentucky State Police," which the Court will call "KSP."

## B.  Plaintiff asserts nine causes of action against each defendant

The claims against each party all use the same or similar language.  Because this is a motion to dismiss, the Court will ignore any facts outside the four corners of the complaint.[2]  The complaint is separated into sections labeled "Counts," though each Count represents a different set of defendants and not a cause of action.  Within each Count, Plaintiff asserts up to seven causes of action—often with just a sentence to support each.  There is no separate facts section.

The first paragraph of the complaint—under the heading "JURISDICTION"—appears to assert 28 U.S.C. § 1983 claims under the First and Fourteenth Amendments against all seventeen defendants.  It states:

> 1.  This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage of a right, privilege, and immunity secured to the Plaintiff by the First and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, and arising under the laws and statutes of the Commonwealth of Kentucky.

DN 1-3, PageID # 3, ¶ 1.  In the following section, Plaintiff identifies the defendants and says that all of the individuals were acting under color of law and as agents of their respective government entities.  Then, the complaint lists Plaintiff's causes of action.  In Count 1, Plaintiff lays out his causes of action against the Brandenburg Defendants as follows:

> 22.   Defendant Todd Matti, while in the course of his employment and duties with the Police Department of the City of Brandenburg, Kentucky, wrongfully restrained the minor Plaintiff, transported the minor Plaintiff, and sexually assaulted the minor Plaintiff.

> 23.   Defendant Scotty Singleton, acting in his capacity as Chief of Police for the Police Department of the City of Brandenburg, Kentucky failed to adequately screen and research the background of Defendant Todd Matti prior to employing

---

[2] Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  In its response briefs, Plaintiff's counsel attached two documents and alluded to several facts outside of its complaint.  *E.g.* DN 16, PageID # 106-08.  The Court is not prepared to rule on a motion for summary judgment in this case, so these allegations have been excluded from consideration.

him as a Police Officer for the City of Brandenburg and as a result of his negligence in this regard, Defendant Todd Matti, was hired and cloaked with authority as a Police Officer for the City of Brandenburg thereby enabling him to perform the acts and wrongful conduct complained herein.

24.     Defendant Singleton and the Police Department of The City of Brandenburg were negligent in their hiring, training, supervision, and retention of Defendant Matti.

25.     The agents, servants, employees, or other personnel for the Police Department of the City of Brandenburg, Kentucky were negligent in their hiring, training, supervision and retention of Defendant Matti.

26.     That the aforementioned acts and wrongful conduct of Defendant Matti constituted an assault and battery for which Plaintiff is entitled to damages alleged herein.

27.     That the allegations herein constitute a wrongful detention or imprisonment of Plaintiff, for which Defendants are liable to the Plaintiff in an amount to be determined at trial.

28.     That the allegations herein constitute a sexual assault upon the minor Plaintiff.

29.     That the acts and wrongful conduct of the Defendants constituted an intentional infliction of emotional distress for which Plaintiff is entitled to damages against Defendants in an amount to be determined at trial.

DN 1-3, PageID # 18-19, ¶¶ 22-29.  Plaintiff repeats these allegations almost verbatim against

the Breckinridge County Defendants (Count II), Stratford Young and the KSP (Count III), and

Jerry Clanton and the KSP (Count IV).  A section labeled "DAMAGES" follows:

52.     As a direct and proximate result of the aforesaid acts and wrongful conduct of Defendants, Plaintiff has sustained severe emotional and physical injury and harm, incurred and will incur expenses for necessary medical, psychological and rehabilitative care, has and will in the future endure pain and suffering, both mental and physical, mental anguish, and loss of enjoyment of life, has endured a permanent injury and impairment, all of which she seeks damages in an amount to be determined at trial and which exceeds the minimum jurisdictional limits of this Court.

53.     That the acts and wrongful conduct of Defendants, were wanton reckless, grossly negligent, and in willful disregard of the rights of Plaintiff, such that Plaintiff is entitled to additional exemplary or punitive damages in an amount to

be determined at trial which exceeds the minimal jurisdictional limits of this Court.

DN 1-3, PageID # 22 ¶¶ 52-53.

### C.  There are two pending motions

Two motions to dismiss followed.  Singleton (the Police Chief) and the City moved to dismiss six claims against them.  Likewise, Brewer (the KSP Commissioner) and KSP moved to dismiss all claims against them.  In the same motion, KSP Troopers Young and Clanton moved to dismiss all official capacity claims against them.  The Court will consider the motions in turn.

### II.       Motion to Dismiss Standard

The Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court."  Fed. R. Civ. P. 81(c)(1).  In order to survive dismissal for failure to state a claim under these rules, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions.'"  *Id.* at 488.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III.      The Brandenburg Defendants' Motion to Dismiss

The Court first analyzes the Brandenburg Defendants' partial motion to dismiss six claims: (1) all official capacity claims against Singleton and Matti, (2) the First Amendment claims, (3) the vicarious liability claims, (4) the intentional infliction of emotional distress claims, (5) the negligent hiring and retention claims, and (6) the punitive damages claims.

### A.  The official capacity claims against Singleton and Matti are duplicative

The first issue is whether the Court should dismiss the official capacity claims against Singleton and Matti.  An "[o]fficial-capacity suit[] . . . 'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. N.Y.C. Dept. of Social Servs.,* 436 U.S. 658, 690, n. 55, (1985)).  "It is *not* a suit against the official personally, for the real party in interest is the entity."  *Id.* at 166.  Given Eleventh Amendment doctrine, "[t]here is no longer a need to bring official-capacity actions against local government officials . . . [because] local government units can be sued directly for damages and injunctive or declaratory relief."  *Id.* at 167 n.14; *see also Owens v. Southerland*, No. Civ.A. 5:03-95-JMH, 2006 WL 625289, at *3 (E.D. Ky. Mar. 10, 2006) (dismissing official capacity suits against individuals as duplicative where the plaintiff also sued a municipality).  This final point is key—unlike a state, which is entitled to sovereign immunity under the Eleventh Amendment, counties and municipalities receive no such protection. *Mt. Healthy City Sch. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).[3]

By asserting identical claims against (1) Singleton in his official capacity *and* (2) the City, Plaintiff has two identical lawsuits against a single "real party in interest"—the City of Brandenburg, a municipality not entitled to Eleventh Amendment immunity.  This approach is

---

[3] State and federal sovereign immunity differ on this point.  Under federal law, a county is considered a municipal entity for sovereign immunity purposes, whereas Kentucky law treats counties as arms of the state. Compare Doyle, 429 U.S. at 280 with Wilson v. City of Central City, 372 S.W.3d 863, 868 (Ky. 2012) ("[O]ur sovereign immunity jurisprudence has long distinguished between counties, which are protected by sovereign immunity, and municipalities, which are not.").  Nevertheless, the distinction is irrelevant to this portion of the case.

unnecessarily duplicative.  Because the City is a party to this lawsuit, there is no need for official capacity claims against the officers.  The same analysis applies to official capacity claims against Matti.  The official capacity claims against Singleton and Matti will therefore be dismissed.

Though the Breckinridge County Defendants did not move for dismissal, the same analysis applies to them.  Plaintiff sued Woosley in his official capacity, Pate in his official capacity, and the Breckinridge County Sheriff's Office.  Because the official capacity suits are effectively suits against the Breckinridge County Sheriff's Office, the first two of these suits are duplicative of the third.  Thus, although these Defendants did not make a motion, the Court will exercise its authority to clarify the causes of action that may proceed.  Any official capacity claims against Pate (the County Sheriff) and Woosley (the Deputy Sheriff) are also dismissed.

### B.  The First Amendment claims against all defendants fail

Next, Singleton and the City moved to dismiss the First Amendment claims.  Plaintiff only mentions the First Amendment in passing in the first paragraph of the complaint, and no facts suggest that Plaintiff has a plausible claim for relief under the First Amendment.  That falls woefully short of the federal pleading requirements outlined in *Twombly* and *Iqbal*.

Plaintiff's response to this portion of the motion is curious:  "Through the filed Complaint, the Plaintiff has properly identified the deprivation of D.H.'s Constitutional Rights as a violation of her Fourteenth Amendment substantive due process right to bodily injury.  The First Amendment provides the necessary protection to the Plaintiff to make such assertion."  DN 17, PageID # 4-5.  Plaintiff also says that "the First Amendment provides an appropriate partial basis for Plaintiff 'to petition the Government for a redress of grievances.'"  *Id.* at PageId # 6.  True.  But it is unclear how Plaintiff could possibly assert a First Amendment claim for relief against any of the named defendants for "protection" to file a due process claim.  The complaint

is entirely devoid of facts that could possibly support a First Amendment claim against anyone; as such, all of those claims will be dismissed.

### C.  All vicarious liability claims against the City, Singleton, and the Breckinridge County defendants fail

The third issue is whether the City and Singleton are vicariously liable for the unlawful actions (allegedly) committed by Matti—§ 1983 and the Fourteenth Amendment, assault, battery, wrongful imprisonment, and intentional infliction of emotional distress.  Because the allegations against each are identical, the Court will also consider the vicarious liability claims against Pate and the Breckinridge County Sheriff's Office.

The Court first reviews the § 1983 claims.  In *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978), the Supreme Court held that "a municipality cannot be liable under § 1983 on a *respondeat superior* theory."  It further concluded "that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."  *Id.* at 694.  *See also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011).  Here, respondeat superior is the *only* basis Plaintiff asserts to hold the city liable under § 1983.  *See* Complaint, DN 1-3, PageID # 16 ¶ 9 ("Defendants Todd Matti and Scotty Singleton were the servants, agents, or employees of the Police Department of the City of Brandenburg, Kentucky and the City of Brandenburg, so that their acts are imputed to them.")  In addition, Plaintiff does not allege that it was the City's "policy or custom" to violate its residents' substantive due process rights through sexual assault. The same analysis applies to the Breckinridge County claims.  Accordingly, all § 1983 claims grounded in vicarious liability must be dismissed.

The state law claims fail for a different reason:  They are intentional torts outside the scope of Matti's employment.  Under Kentucky law, an employer is only liable for the acts of its employees under the doctrine of respondeat superior if the proximate cause of a plaintiff's injury was "an act committed by an employee acting within the course and scope of his employment." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 731 (Ky. 2009).  The standard for intentional torts is more demanding:  "An employee's scope of employment includes an intentional tort 'committed by [an employee] where its purpose, however misguided, is wholly or in part to further the [employer's] business.'"  *Id.* at 732 (quoting *Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005)).  But "[i]f, however, an employee acts from purely personal motives which are in no way connected with the employer's interest, he is considered in the ordinary case to have departed from his employment, and the [employer] is not liable."  *Id.* (quoting *Papa John's Int'l, Inc. v. McCoy*, 244 S.W.3d 44, 52 (Ky. 2008)).

The only allegation possibly connecting Matti's alleged wrongdoing with the City or Singleton falls in one sentence of Plaintiff's complaint:  "Defendant Todd Matti, while in the course of his employment and duties with the Police Department of the City of Brandenburg, Kentucky, wrongfully restrained the minor Plaintiff, transported the minor Plaintiff, and sexually assaulted the minor Plaintiff."  DN 1-3, PageID # 18, ¶ 22.  *See also* DN 1-3, PageID # 19, ¶ 30 (making identical claims against Chris Woosley and the Breckinridge County Sheriff's Office).

That sentence does not establish a plausible case that Matti was acting "wholly or in part to further" the City or Singleton's business at the time Matti allegedly committed the torts because the sexual assault of a minor is outside the scope of anyone's employment.  *See Am. Gen. Life & Accident Ins. Co. v. Hall*, 74 S.W.3d 688, 692 (Ky. 2002) (noting that, with the exception of some statutory civil rights cases, "an employer is not vicariously liable for an

intentional tort of an employee . . . motivated . . . solely by a desire to satisfy the employee's own sexual proclivities"); *Osborne v. Payne*, 31 S.W.3d 911 (Ky. 2000) (holding that a Roman Catholic Diocese was not vicariously liable for torts arising out of a priest's affair with a woman during marriage counseling because the priest abused his position); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 566 (6th Cir. 2008) ("[A] therapist's sexual affair with his patient is outside the scope of his employment as a matter of law."). If Matti sexually assaulted D.H., he could not have been acting from motives "connected with the employer's interest." *Brooks*, 283 S.W.3d at 732. Because neither can be vicariously liable for torts arising from the alleged sexual assault, the assault, battery, and intentional infliction of emotional distress claims against Singleton and the City must be dismissed. The same analysis applies to these claims asserted against Pate and the Breckinridge County Sheriff's Office; those must also be dismissed.

That leaves the wrongful imprisonment claim. Plaintiff argues that Matti's job as a police officer often required him to restrain, transport, detain, and imprison people. So he concludes that "a jury could easily determine" that Matti acted within the scope of his employment by restraining, detaining, transporting, and imprisoning D.H. The problem is that no facts in the complaint support this argument. Plaintiff fails to explain how or when Matti "wrongfully restrained the minor Plaintiff" or "transported the minor Plaintiff" beyond the conclusory assertion that Matti performed the acts "while in the course of his employment and duties." DN 1-3, PageID # 18, ¶ 22. That is a legal conclusion that fails to notify the City of the claims against it. It cannot survive a motion to dismiss. Again, the same analysis applies to the

claims against the Breckinridge County defendants.   The remaining vicarious liability claims against the City, Singleton, the Breckinridge County Sheriff's Office, and Pate are dismissed.[4]

### D.  All intentional infliction of emotional distress claims fail

Next, the Court considers Plaintiff's intentional infliction of emotional distress claims.[5] Also known as the tort of "outrage," IIED is a "gap-filler" tort that only stands alone "under the right facts." *Childers v. Geile*, 367 S.W.3d 576, 581-82 (Ky. 2012).   "[W]here an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie." *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993); *see also Childers*, 367 S.W.3d at 582 (same).   This is because "[t]here can be only one recovery for emotional distress on the same acts.   It will either be caused as a result of an injury done to the plaintiff physically"—where a separate IIED claim is not available—"or it will be caused by outrageous conduct the purpose of which is to inflict emotional distress"—where IIED is available. *Childers*, 367 S.W.3d at 583.   "The only exception is where one can say that Defendant's physical assault was intended solely to inflict extreme emotional distress." *Doe v. Suroor*, No. 3:05-CV-728-H, 2007 WL 1651993, at *1 (W.D. Ky. June 6, 2007).

Plaintiff's entire IIED theory derives from the assault, battery, and wrongful imprisonment claims.   After concluding that Matti wrongfully imprisoned and sexually assaulted D.H., the complaint states:  "That the acts and wrongful conduct of the Defendants constituted an intentional infliction of emotional distress for which Plaintiff is entitled to damages against

---

[4] The Court previously dismissed Plaintiff's vicarious liability claims under 42 U.S.C. § 1983 because the Supreme Court holds that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

[5] The Court previously dismissed Plaintiff's vicarious liability IIED claims against Singleton, the City, Pate, and the Breckinridge County Sheriff's Office.

Defendants . . . ." DN 1-3, PageID # 19, ¶ 29.  Each of the prior seven paragraphs asserts a different, "traditional" tort against Matti and his superiors.  Plaintiff's own brief lists these torts before concluding that "[e]ach of these above causes of action could support a claim for . . . outrage depending on the specific facts revealed during comprehensive discovery."  DN 17, PageID # 317.  But that is not the law in Kentucky; "[i]f a set of facts establishes a traditional tort, by definition it cannot establish intentional infliction of emotional distress."  *Childers*, 367 S.W.3d at 584.

Nor does the exception apply.  If Plaintiff's allegations are true, then Defendant's sole intention was not to inflict extreme emotional distress.  As Senior District Judge John G. Heyburn II held in an analogous case, "[c]learly, sexual gratification or sexual dominance was the primary purpose at work here.  Consequently, under the rule in *Rigazio*, Plaintiff's claim of outrage must be dismissed."  *Suroor*, 2007 WL 1651993, at *1.  Because Plaintiff's complaint alleges nothing beyond "traditional torts" and no exception applies, the standalone IIED claims must be dismissed.[6]  Moreover, Plaintiff's complaint uses identical language to assert IIED claims against all other defendants.  These too are dismissed.[7]

### E.  All negligent hiring, training, and supervision claims are deficient

The fifth issue is whether Plaintiff's claims for negligent hiring, training, and supervision should be dismissed.  Singleton and the City argue that the claims fail the *Twombly* and *Iqbal* standards; for his part, Plaintiff argues (1) this Court is required to apply Kentucky's more liberal pleading standards because the complaint was initially filed there; (2) Defendants never

---

[6] While an IIED claim could be pleaded alternatively in some cases, *see Childers*, 367 S.W.3d at 581, this is not one of them.  "[W]hile the intentional infliction of emotional distress could be pleaded alternatively, *a litigant cannot prevail on both a negligence claim and an intentional infliction of emotional distress claim on the same facts.*" *Id.*  Plaintiff's complaint asserts no independent facts that could possibly support a standalone IIED claim.

[7] To clarify, Plaintiff may still seek damages for emotional distress arising from his other tort claims.  This result is consistent with the policy underlying Kentucky law:  If Plaintiff were allowed to move forward with his IIED claim and his other claims, he would be seeking double recovery for the same acts.

requested a more definitive statement; (3) Rule 26(b)(1) entitles the parties to conduct discovery after initiating a claim; (4) genuine issues of material fact preclude dismissal; and (5) the Court can infer that Singleton and the City negligently hired, trained, and supervised Matti solely from the facts in its complaint. The first four arguments are incompatible with the Federal Rules of Civil Procedure; the fifth fails factually and legally.

With respect to the first argument, the Federal Rules of Civil Procedure—including Rule 8 and Rule 12(b)(6)—explicitly apply to cases removed from state court. *See* Fed. R. Civ. P. 81(c)(1). Rule 81(c)(1) uses "expansive language [that] contains no express exceptions and indicates a clear intent to have the Rules . . . apply to all district court civil proceedings." *Willy v. Coastal Corp.*, 503 U.S. 131, 134-35 (1992). *Twombly* and *Iqbal* interpret those rules. And "[a]lthough the Sixth Circuit has not addressed the issue since the Supreme Court's ruling in *Iqbal*, federal district courts . . . have consistently held that federal pleading requirements under Rule 8 and the *Twombly-Iqbal* standard apply to removed complaints, even where the state pleading standard is more lenient." *Simmerman v. Ace Bayou Corp.*, No. 5:14-382-DCR, 2015 WL 233255, at *1, __ F.R.D. __ (E.D. Ky. Jan. 15, 2015) (collecting cases). This Court agrees and applies the federal standard.

The second, third, and fourth arguments are equally misplaced. While Rule 12(e) *allows* defendants to move for a more definite statement, it does not *require* them to do so before filing a Rule 12(b)(6) motion to dismiss. While Rule 26(b)(1) governs discovery, it certainly does not "entitle" a party to discovery on meritless claims. The fourth argument misstates the standard— while "genuine issues of material fact" preclude summary judgment, *Twombly* and *Iqbal* require a complaint to assert a "plausible" claim for relief.

The fifth argument warrants more discussion. To state a prima facie claim for negligent hiring under Kentucky law, a plaintiff must show that "(1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Stalbosky v. Belew*, 205 F.3d 890, 894 (6th Cir. 2000) (citing *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. App. 1998)). The totality of the facts asserted to support the negligent hiring, training, and supervision claims can be found in three paragraphs:

> 23.    Defendant Scotty Singleton, acting in his capacity as Chief of Police for the Police Department of the City of Brandenburg, Kentucky failed to adequately screen and research the background of Defendant Todd Matti prior to employing him as a Police Officer for the City of Brandenburg and as a result of his negligence in this regard, Defendant Todd Matti, was hired and cloaked with authority as a Police Officer for the City of Brandenburg thereby enabling him to perform the acts and wrongful conduct complained herein.

> 24.    Defendant Singleton and the Police Department of The City of Brandenburg were negligent in their hiring, training, supervision, and retention of Defendant Matti.

> 25.    The agents, servants, employees, or other personnel for the Police Department of the City of Brandenburg, Kentucky were negligent in their hiring, training, supervision and retention of Defendant Matti.

DN 1-3, PageID # 18-19. Two deficiencies require dismissal. First, Plaintiff fails to allege the first element of recovery: that the City or Singleton knew or reasonably should have known that Matti was unfit to be a police officer. Second, Paragraphs 24 and 25 are not even "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" that would be insufficient under *Iqbal*, 556 U.S. at 678. They are nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusations" that do not suffice. *Id.* Plaintiff's claims against the Breckinridge County defendants are nearly identical and thus suffer the same legal and factual deficiencies. All of those claims will be dismissed.

### F.  Plaintiff cannot obtain punitive damages from the City

Last, the Court must decide whether Plaintiff can seek punitive damages against the City under federal or state law.  "Judicial disinclination to award punitive damages against a municipality has persisted to the present day in the vast majority of jurisdictions."  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 (1981).  "The general rule today is that no punitive damages are allowed [against a municipality] unless expressly authorized by statute."  *Id.* at 260 n.21.  This makes sense in light of the policy supporting punitive damages: punishing a wrongdoer and deterring future extreme conduct.  *Id.* at 266-67.  In a suit against a municipality, the punishment rationale falls away because "an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort."  *Id.* at 267.  And the deterrent effect of punitive damages on municipal officials is limited and far outweighed by the cost to taxpayers.  *Id.* at 269-271.  Moreover, "the unlimited taxing power of a municipality may have a prejudicial impact on the jury, in effect encouraging it to impose a sizable award."  *Id.* at 270.  "The impact of such a windfall recovery is likely to be both unpredictable and, at times, substantial, and we are sensitive to the possible strain on local treasuries and therefore on services available to the public at large."  *Id.* at 270-71.  In light of these policy considerations, the Supreme Court holds that "a municipality is immune from punitive damages under 42 U.S.C. § 1983."  *Id.* at 271.

That takes care of Plaintiff's claim for punitive damages under federal law, but what of his state-law claims?  Does Kentucky law follow the "general rule" announced in *City of Newport*?  Unfortunately, the Kentucky Supreme Court has left this question open.  As such, "the federal court must ascertain from all available data, including the decisional law of [Kentucky's] lower courts, what the [Kentucky Supreme Court] would decide if faced with the issue."  *Ziegler*

*v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001); *see Erie R.R. v. Tompkins*, 304 U.S. 64, 68 (1938). In analyzing this data, decisions of the Kentucky Court of Appeals "should not be disregarded unless [the Court is] presented with persuasive data that the [Kentucky] Supreme Court would decide otherwise." *Ziegler*, 249 F.3d at 517.

The Court begins with a Kentucky statute, KRS 65.2002, which states: "The amount of damages recoverable against a local government for . . . personal injury . . . shall not exceed the total damages suffered by plaintiff, reduced by the percentage of fault including contributory fault, attributed by the trier of fact to other parties, if any." And in relevant part, "local government" is defined as "any city incorporated under the law of this Commonwealth [or] the offices and agencies thereof . . . ." KRS 65.200(3).

Two opinions in *Phelps v. Louisville Water Co.*, 103 S.W.3d 46 (Ky. 2003) are also instructive. There, the lower court held that the Louisville Water Company ("LWC") "was an agency of the City of Louisville, and as such, fell within the definition of 'local government' as defined by [KRS] 65.200(3) . . . . The court found that KRS 65.200 et seq. precludes an award of punitive damages against a 'local government' and therefore reversed the . . . punitive award against LWC." *Id.* at 49. The Kentucky Supreme Court reversed, holding that "LWC is not an agent of the City of Louisville and therefore does not fall within the definition of 'local government' pursuant to KRS 65.200(3). As a result, KRS 65.200-2002 does not preclude an award of punitive damages against LWC." *Id.* That sentence concluded with an important footnote: "We do not reach the issue of whether KRS 65.200-2002 prohibits an award of punitive damages against a local government." *Id.* at 49 n.2.

Justice Johnstone and two others would have reached the issue.  In a concurring opinion, [8] Justice Johnstone concluded that "Kentucky common law does not follow the 'general rule' announced by the U.S. Supreme Court in *City of Newport* that prohibits the imposition of punitive damages against a municipal corporation."  *Id.* at 59.  The concurrence asserted two arguments to support this conclusion.  First, it noted the lack of Kentucky precedent for the general rule, stating that the "only Kentucky case that raises the question . . . leaves the question open."  *Id.* at 57 (citing *Clayton v. City of Henderson*, 44 S.W. 667, 669 (Ky. 1898)).  Second, it said that "cases following *Clayton* involving punitive damages against a city imply that punitive damages are available against a city, because municipal immunity from punitive damages is never mentioned as a defense."  *Id.* at 58 (citing *City of Covington v. Faulhaber*, 199 S.W. 32 (1917); *City of Middlesboro v. Brown*, 63 S.W.3d 179 (2001)).  Then, Justice Johnstone concluded that "even if Kentucky followed . . . *City of Newport*, the 'general rule' does not shield the LWC from punitive damages" because the LWC is not a "municipal corporation" within the meaning of the general rule.  *Id.* at 58.

A Kentucky Court of Appeals decision provides additional instruction.  In *Louisville Metro Housing Authority v. Burns*, 198 S.W.3d 147 (Ky. App. 2005), the trial court awarded punitive damages against the Louisville Metro Housing Authority.  The Court of Appeals reversed, holding that "the Authority sufficiently satisfies the criteria described in *Phelps* to bring it within the protections against punitive damage awards contained in KRS 65.2002."  *Id.* at 151.

In light of the statute, *Burns*, *City of Newport*, and *Phelps*, this Court finds that the Kentucky Supreme Court would not allow for punitive damages against a municipality.  First, KRS 65.2002 clearly addresses the issue under state law:  "The amount of damages recoverable

---

[8] Plaintiff quoted this opinion at length without noting that it was merely a concurrence.

against a local government for . . . personal injury . . . *shall not exceed* the total damages suffered by plaintiff." KRS 65.2002 (emphasis added). Punitive damages serve to punish and deter— they exceed the "total damages suffered by plaintiff." Second, the Court of Appeals has clearly held that KRS 65.2002 provides "protections against punitive damage awards" to local governments. *Burns*, 198 S.W.3d at 151. Third, the policy considerations outlined by the United States Supreme Court in *City of Newport* are persuasive and likely to be followed by the Kentucky Supreme Court. Finally, Justice Johnstone's concurring opinion in *Phelps* does not compel a different result. That opinion was likely a response to the Louisville Water Company's unique organization.[9] It seems quite unlikely that a majority of the Kentucky Supreme Court would apply that reasoning to a suit against a municipality. Accordingly, the Court concludes that the plaintiff may not recover punitive damages the City of Brandenburg.

## IV. The KSP Defendants' Motion to Dismiss

The Court now turns to review the KSP Defendants' motion to dismiss. The KSP, Commissioner Brewer, Trooper Young, and Trooper Clanton have moved to dismiss all official capacity suits against them. Additionally, Brewer has moved to dismiss all individual capacity claims against him. The Court considers the arguments in turn.

### A. A plaintiff may not sue a state under Section 1983

The Court first considers the § 1983 claims against KSP and the others in their official capacities. By its terms, § 1983 only applies to "person[s]." 42 U.S.C. § 1983 ("Every person who . . . ."). The Supreme Court holds that "neither a State nor its officials acting in their official

---

[9] The Louisville Water Company was privately incorporated in 1854. In 1906, the City of Louisville purchased all of LWC's stock and the Kentucky General Assembly created the Board of Water Works to govern LWC. Now, "the make-up of LWC is as follows: the City of Louisville holds legal title to the physical property; all stock is owned by the City and held in its sinking fund; the Board controls the management and properties of LWC; and LWC itself is still a distinct corporate entity." *Phelps*, 103 S.W.3d at 49. It is not an agent of the City of Louisville. *See id.* at 51.

capacities are 'persons' under § 1983." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). As such, § 1983 claims against KSP and Brewer, Young, and Clanton in their official capacities must be dismissed.

### B. The Eleventh Amendment bars the official capacity suits

The next issue is whether the Eleventh Amendment bars Plaintiff's remaining claims against KSP and Brewer, Young, and Clanton in their official capacities. Eleventh Amendment doctrine generally provides that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Emps. of Dept. of Public Health & Welfare v. Dept. of Public Health & Welfare*, 411 U.S. 279, 281 (1973). This also applies to defendants that are an "arm of the state." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Moreover, "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984).

Here, Plaintiff's complaint purports to state a claim for money damages against the "Commonwealth of Kentucky d/b/a Kentucky State Police" and three employees in their official capacities. No one disputes that KSP is an arm of the Commonwealth of Kentucky. No exceptions to the Eleventh Amendment apply. As such, all claims against KSP and personnel in their official capacities must be dismissed.

### C. The claims against Brewer are implausible

Next, the Court considers whether Plaintiff's complaint asserts a plausible case against Commissioner Brewer in his individual capacity. The section of the complaint that asserts a claim against Brewer, DN 1-3, PageID # 20-21, ¶¶ 39-44, is identical to the section asserting a claim against Singleton, the Police Chief, DN 1-3, PageID # 18-19, ¶¶ 23-29. The Court

19

dismissed all individual capacity claims against Singleton above in Sections III.B (First Amendment), III.C (vicarious liability),[10] III.D (intentional infliction of emotional distress), and III.E (negligent hiring, training, and supervision).[11]   For the same reasons explained in those sections, all individual capacity claims against Brewer must be dismissed.

A separate Order will issue consistent with this Memorandum Opinion.

July 22, 2015

Charles R. Simpson III, Senior Judge
United States District Court

cc:   Counsel of Record

---

[10] In his response brief to the KSP motion, Plaintiff quotes supervisory liability under Section 1983 at length.   But his complaint is grounded entirely in vicarious liability.

[11] Brewer also asserts that he is entitled to qualified immunity.   The pleadings do not provide sufficient facts at this point to rule on this issue.

20